# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

**LOCAL 365 PENSION FUND,** *et al.*

    **Plaintiffs,**

v.

**KAPLAN BROS. BLUE FLAME CORP.,** *et al.*

    **Defendants.**

Civ. No. 20-10536 (KM)(JBC)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    The Trustees of Local 365 UAW Pension Fund (the "Fund") initiated this action to recover withdrawal liability pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001-1461, against defendant Kaplan Bros. Blue Flame Corp. ("Kaplan") and all unnamed trades or businesses under its common control. Because defendants have failed to answer or otherwise respond to the Complaint, the Trustees now move for default judgment. The Trustees seek entry of judgment for withdrawal liability, interest, liquidated damages, and attorneys' fees and costs, pursuant to 29 U.S.C. §§ 1132(g)(2)(A)-(D), 1145, 1399(c)(5), (6), 1451(b), and 29 C.F.R. § 4219.32.

    For the reasons provided herein, I will grant the Trustees' motion and enter default.

## I.    Summary[1]

### a.  Factual Background

    The Fund maintains an "employee pension benefit plan" under ERISA § 3(1), 29 U.S.C. § 1002(2), (the "Plan"). (Compl. ¶3). The Plan provides retirement

---

[1]    Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

income to employees for whom employers make contributions and is maintained pursuant to collective bargaining agreements between employee organizations and various employers. (*Id.*). Thus, the Fund is a "multiemployer plan" within the meaning of ERISA § 3(37), 20 U.S.C. § 1002(37). (*Id.*).

At all relevant times, Defendant Kaplan was and remains an employer in an industry affecting commerce within the meaning of ERISA §§ 3(5), (11), and (12), 29 U.S.C. §§ 1102(5), (11), and 12). (Compl. ¶6). The Complaint alleges on information and belief that John Does One through Ten are employers related to Kaplan within the meaning of 26 U.S.C. § 414(b), (c), (m), (n) or (o). (Compl. ¶7).

Kaplan operated a business that employed members of the UAW Local 365 ("Union"). (Compl. ¶8). The terms and conditions of employment for Kaplan's employees were governed by collective bargaining agreements between Kaplan and the Union. (Compl. ¶9). Under those agreements, Kaplan was obligated to make certain contributions to the Fund, which it regularly and consistently made until its withdrawal in or around June 2019. (Compl. ¶¶9, 11).

### b. The Complaint

On August 14, 2020, the Trustees filed its complaint against Kaplan and John Does One through Ten asserting claims for withdrawal liability (**Count 1** as against Kaplan and **Count 2** as against the unnamed defendants) and for injunctive relief in the form of enjoining the dissipation of defendants' assets (**Count 3** against all defendants). (Compl. ¶¶10-30).

With respect to their claim for withdrawal liability (**Counts 1** and **2**), the Trustees assert that in June 2019, Kaplan permanently ceased making its required contributions to the Fund, which constituted "complete withdrawal" under ERISA. (Compl. ¶11). Pursuant to ERISA § 4201, 29 U.S.C. § 1381, Kaplan "is obligated to pay withdrawal liability to the Fund for its proportionate

---

"DE" = Docket entry number in this case.

"Compl." = Plaintiffs' Complaint (DE 1)

"Trustees' Brief" = Plaintiffs' Memorandum of Law in Support of its Motion for Default Judgment (DE 9-2)

"Hertzig Decl." = Declaration of Regina C. Hertzig, Esq. (DE 9-3)

share of the Fund's unfunded vested benefits." (Compl. ¶12). The Trustees submit that, in accordance with ERISA § 4211, 29 U.S.C. § 1391 and the applicable provisions of the Trust Agreement, the Fund preliminarily calculated Kaplan's withdrawal liability to be $1,464,723. (*Id.*) On December 17, 2019, the Fund sent Kaplan a written demand for its withdrawal liability and informed Kaplan that it could amortize payments in eighty consecutive quarterly installments of $366.50 (Compl. ¶13), apparently a discount. The letter explained that the first quarterly payment would be due on February 17, 2020. (*Id.*). The letter further informed Kaplan that the calculated withdrawal liability was a preliminary amount as the December 31, 2019 valuation was not yet completed. (*Id.*; DE 1-1 ("Exhibit A")).

On February 20, 2020, the Fund sent Kaplan an updated withdrawal liability figure in the amount of $2,553,193. (Compl. ¶14). Although the total increased, the quarterly payment schedule of $366.50 did not change. (*Id.* DE 1-2 ("Exhibit B")).

On April 29, 2020, the Fund notified Kaplan that it had failed to make the first quarterly payment by February 17, 2020, and that, if such failure was not cured within sixty days, Kaplan would be in default within the meaning of ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5) ("Default Notice"). (Compl. ¶16; DE 1-3 ("Exhibit C")). More than sixty days have elapsed since the Notice of Default was electronically mailed to Kaplan and, as of the filing of the Compliant, Kaplan has failed to make its first quarterly payment or any subsequent payment. (Compl. ¶17). Additionally, Kaplan did not request review of the withdrawal liability assessment within sixty days of its issuance, as required under ERISA § 4219 (b)(2), 29 U.S.C. § 1399(b)(2). (Compl. ¶18).

Such a default on withdrawal liability obligations causes the entire outstanding balance to become due and owing under ERISA § 4219 (c)(5), 29 U.S.C. § 1399(c)(5), and ERISA § 515, 29 U.S.C. § 1145. (Compl. ¶19). Additionally, the Trustees submit that Kaplan "is obligated to pay the greater of liquidated damages of twenty (20%) percent of the unpaid amount due and owing, or the amount of interest awarded, plus costs and attorneys' fees." (Compl. ¶21). The Trustees submit that the unnamed "John Doe" defendants are jointly and severally liable for those amounts. (Compl. ¶¶22, 25).

Regarding the Trustees' claim for injunctive relief (**Count 3**), the Complaint asserts the following:

> Unless Defendants are restrained and enjoined from distributing, alienating, transferring, assigning, encumbering or otherwise disposing of their assets, Defendants will have no assets with which to meet their obligation to the Fund thereby causing the Fund and its pension participants and beneficiaries immediate and irreparable loss, damage, and injury for which the Fund will have no adequate remedy of law.

(Compl. ¶29). Further, the Complaint alleges that the Fund "will be subjected to irreparable hardship and injury in the event that Defendants are not immediately restrained and enjoined, and the status quo maintained during the pendency of this action." (Compl. ¶30).

Because defendants have failed to answer or otherwise respond to the Complaint, the Trustees now move for default judgment. The Trustees seek entry of judgment for withdrawal liability plus interest, liquidated damages, and attorneys' fees and costs, pursuant to 29 U.S.C. §1132(g)(2)(A)-(D), 1145, 1399(c)(5), (6), 1451(b), and 29 C.F.R. § 4219.32. (Trustees' Brief at 2).

## II. Discussion

### a. Legal Standard

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone,* 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual

allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at \*2.

### b. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Here, the Summons and Complaint were served on November 10, 2020 as to Kaplan Bros. Blue Flame Corp. c/o Charles J. Augusto, Jr., an officer of said defendant's company. The deadline to answer or otherwise respond to the Complaint fell on December 1, 2020. (DE 4, 5, 6). The Clerk's entry of default was duly noted on December 30, 2020 as to Kaplan (Clerk's entry following DE 7). Therefore, the prerequisites for default have been satisfied.[2]

### c. Three-Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

#### i. Factor one: Existence of meritorious defense

As always, evaluation of the first factor is made difficult by defendants' failure to answer or to oppose the motion for default judgment. Nevertheless, my independent review of the record does not suggest that the Trustees' claims are

---

[2] A second, apparently redundant service was made on November 18, 2020 as to defendant Kaplan Bros. Blue Flame Corp. c/o Michael Gluck, an authorized agent. As to that service, the deadline to respond would have been December 9, 2020.

legally flawed. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that the Trustees have established entitlement to the assessed withdrawal liability, interest, liquidated damages, and attorneys' fees and costs.

Under ERISA, as amended by the MPPAA, "employers may make contributions to one or more pension plans on behalf of their employees who belong to a participating union." *Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241, 1243 (3d Cir. 1987). The MPPAA was designed to remedy ERISA's failure to "protect plans from the adverse consequences that resulted when individual employers terminate[d] their participation in, or withdr[e]w from, multiemployer plans." *Id.* (internal citations omitted) (alterations in original) (citing *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722 (1984)). To safeguard such plans, the MPPAA created an infrastructure to assess withdrawal liability for employers that terminate or withdraw from those pension plans. *Id.* at 1243-44.

Pursuant to the MMPPA, "when a contributing employer withdraws from participation in a fund, the employer is responsible for [its] pro rata share of the unfunded vested liability remaining in the fund at the time of withdrawal, subject to certain adjustments." *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 498 (3d Cir. 1992) (citing 29 U.S.C. § 1381(b)). Any businesses "under common control" of a contributing employer are also liable when an employer withdraws from a fund. *Id.* (citing 29 U.S.C. § 1301(b)(1)).

The procedure imposed by the MPPAA is as follows. When an employer withdraws from a pension plan, the trustees must determine the amount of withdrawal liability owed. *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund v. Gotham Fuel Corp.*, 860 F. Supp. 1044, 1047 (D.N.J. 1993); 29 U.S.C. §§ 1381, 1382(1). Then the trustees must notify the employers of the amount of and schedule for withdrawal liability, and demand payment in accordance with that schedule. *Gotham Fuel Corp.*, 860 F. Supp. at 1047; 29 U.S.C. §§ 1382(2), 1399(b)(1). The MPPAA then provides the employer with ninety days from the receipt of notice to request a review of the liability assessed by the trustees, identify any inaccuracies, and furnish any additional relevant information.

*Gotham Fuel Corp.*, 860 F. Supp. at 1047; 29 U.S.C. § 1399(b)(2)(A). Either party may initiate arbitration proceedings if they cannot agree on the amount of withdrawal liability owed. *Gotham Fuel Corp.*, 860 F. Supp. at 1047; 29 U.S.C. § 1401(a)(1). However, if the employer fails to pursue arbitration, then "the withdrawal liability assessment becomes due and owing and the trustees may commence an action to collect the unpaid withdrawal liability from the employer." *Gotham Fuel Corp.*, 860 F. Supp. at 1047; 29 U.S.C. §§ 1401(b)(1), 1451.

The MPPAA's "pay first, dispute later" policy requires the employer to make interim payments to the pension fund pending any final resolution – either through arbitration or by a federal court. *Centra*, 983 F.2d at 498, 508 (holding, *inter alia*, that "ERISA's specific strong policy mandating immediate payment cannot be overridden by general notions that settlements should be accorded finality" and that until the District Court ruled on the enforceability of the settlement agreement, the employer was required to make interim payments to the pension fund); 29 U.S.C. § 1399(c)(2) ("Withdrawal liability shall be payable in accordance with the schedule set for by the plan sponsor under subsection (b)(1) beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.").

Here, withdrawal liability was assessed on Kaplan no later than February 20, 2020. Kaplan failed to take any of the statutorily mandated steps to challenge that assessment, and the time for commencing such a challenge has now run. Thus, under ERISA, Kaplan's withdrawal liability is due and owing. *Gotham Fuel Corp.*, 860 F. Supp. at 1047; 29 U.S.C. §§ 1401(b)(1), 1451. Pursuant to 29 U.S.C. § 1132(g)(2), the Trustees have established entitlement to (A) the unpaid contributions; (B) the interest on the unpaid contributions; (C) the greater of either (1) additional interest on the unpaid contributions or (2) liquidated damages in an amount not in excess of 20 percent of the unpaid

contributions; (D) reasonable attorneys' fees and costs; and (E) such other legal or equitable relief as the Court deems appropriate.[3]

### ii. Factors two and three: Prejudice to Plaintiff and Defendants' culpability

The second and third factors also weigh in favor of default. Defendants were properly served but failed to appear, defend, or otherwise respond to the Complaint. It is clear that the plaintiffs have been prejudiced by this dereliction because they have been "prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiff[s] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant[s'] failure to answer evinces the Defendant[s'] culpability in [the] default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In

---

[3] 29 U.S.C.A. § 1132(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of--

    (i) interest on the unpaid contributions, or

    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

this case, "there is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment.

### d. Remedies

Pursuant to ERISA, as amended by the MPPAA, the Trustees have established entitlement to judgment in the following amounts:

(i) $2,533,193.00 in unpaid withdrawal liability, pursuant to 29 U.S.C. §§1132(g)(2)(A), 1145, 1381(a), and 1399 (c)(5), (Hertzig Decl. ¶7);

(ii) $420,510.04 in interest as of February 1, 2021, pursuant to 29 U.S.C. §§1132(g)(2)(B), 1399(c)(6), 1451(b), 29 C.F.R. § 4219.32. and the provisions of the Trust, (Hertzig Decl. ¶ 8 (calculating interest at the rate of 10% per annum or 0.83% per month ($2,533,193.00 x 0.83% = $21,025.50, $21,025.50 x 20 months = $420,510.00));

(iii) $506,638.60 in liquidated damages, pursuant to 29 U.S.C. §§ 1132(g)(2)(C), 1451(b) (Hertzig Decl. ¶9 (demonstrating liquidated damages ($2,533,193 x 20% = $506,658.60) as greater than the outstanding interest ($420,510));[4] and

(iv) $5,657.20 in attorneys' fees and costs pursuant to §§ 29 U.S.C. 1132(g)(2)(D) and 1451(b) (Hertzig Decl. ¶10 (detailing accounting of the attorneys' fees and costs incurred in this action)).

---

[4] ERISA provides for the greater of either liquidated damages or additional interest. 29 U.S.C. 1132(g)(2)(C); *see also* Hertzig Decl. ¶9. I have therefore denied the request for additional interest.

### III. Conclusion

For the reasons set forth above, I will grant plaintiffs' motion (DE 9) and enter default judgement.

An appropriate order and judgment follows.

Dated: May 18, 2021

/s/ Kevin McNulty

**Kevin McNulty**
**United States District Judge**